Susan M. MacENTEE, Plaintiff

v.

**IBM (INTERNATIONAL BUSINESS MACHINES), Defendant.**

No. 08 Civ. 7491 (GBD)(RLE).

United States District Court, S.D. New York.

March 3, 2011.

Susan M. MacEntee, Highland, NY, pro se.

Dana Loryn G. Weisbrod, Kevin G. Lauri, Jackson Lewis, L.L.P., New York, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

*Pro se* plaintiff Susan M. MacEntee commenced this action against her employer, International Business Machine ("IBM").[1] She claims that IBM harassed and discriminated against her because of her depression in violation of various federal and state laws. In her Second Amended Complaint[2], Plaintiff alleges claims for: (1) unspecified discrimination under Title VII and/or Title V of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; (2) failure to accommodate, harassment, and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*; (3) discrimination under New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAWS §§ 290–97; and (4) intentional infliction of emotional distress under New York common law. Defendant moves to dismiss all of Plain-

tiffs claims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and to dismiss Plaintiff's NYSHRL claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Defendant's motion is granted. Plaintiff's Second Amended Complaint is dismissed in its entirety.

### FACTS[34]

MacEntee was originally hired by IBM in 1984 as a Manufacturing Operator where she worked until she was laid off in a downsizing in 1993. *See* Form Compl. Att. ¶ 8; Administrative Compl. 1. Around October 30, 2000, MacEntee was rehired as a full-time Operator Specialist and in 2004 MacEntee was transferred to IBM's Poughkeepsie location. Administrative Compl. 1. In 2005, MacEntee was diagnosed with major depression and was given six-months of short-term disability leave from July until December 2005. Form Compl. ¶ 7. Around May 2006, MacEntee was transferred to IBM's East Fishkill location and to IBM's screening department.[5] Form Complaint Att. ¶ 9. In

---

1. MacEntee initially named the New York State Division of Human Rights ("NYSDHR") alleging that NYSDHR failed to investigate her claims. On August 25, 2008, Chief Judge Preska dismissed MacEntee's claims against NYSDHR pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). The case was subsequently reassigned to this Court.

2. Plaintiff's Second Amended Complaint is comprised of a *pro se* form complaint ("Form Complaint") and an eight page attachment ("Form Complaint Att.") containing a description of Plaintiffs claims. The paragraphs and pages of Plaintiff's attachment are unnumbered. In their moving papers, Defendant hand numbered the paragraphs of Plaintiff's Second Amended Complaint, this Court will utilize the Defendant's numbering scheme.

3. On a motion to dismiss, this Court assumes that all the facts in the complaint are true.

Further, since courts are to read *pro se* plaintiff's papers liberally, this Court will incorporate facts referenced in MacEntee's voluminous submissions but not in the Complaint.

4. MacEntee telephoned Chambers and indicated she wanted to submit a letter with additional evidence. Since discovery is closed and the deadlines for this motion passed, MacEntee may not submit any additional material to be considered for this motion.

5. The parties do not indicate why MacEntee was transferred to IBM's East Fishkill location or why MacEntee was reassigned to the screening department. MacEntee alleges that, "[s]creening is the most difficult process on the manufacturing line," but that employees have no input on new placement decisions as often multiple employees request transfers for a limited number of vacant positions. Form Compl. Att. ¶¶ 24, 25.

order to perform her new job, she had to undergo extensive training. *See id.*

In the screening department, MacEntee had a difficult time learning her new job and took nearly six months and working with four different trainers to acquire the necessary skills. Ordinarily, it takes an employee six to eight weeks with a single trainer to complete training. Form Compl. Att. ¶ 13. During this time, MacEntee had a number of issues with her trainers and even had a verbal altercation with one. Form Compl. Att. ¶ 12. MacEntee concedes that at least one of her trainers "[u]nderstandably . . . became impatient with my inability to learn quickly." Form Compl. Att. ¶ 14. Further, MacEntee had a number of public outbursts in the workplace including: crying episodes, conflicts with fellow coworkers, and at least one incident where MacEntee used profane language towards one of her trainers. Form Compl. ¶ 14. MacEntee would often leave work without notifying her managers on duty. Form Compl. Att. ¶ 14.

After problems with her first trainer, MacEntee decided she had to "self-advocate an accommodation for [herself.]" Form Compl. Att. ¶ 12. MacEntee determined that she needed a "patient trainer." Form Compl. Att. ¶ 12.

After working with three "impatient" trainers, MacEntee notified her supervisor, James Schmatz, that she suffered from depression, but did not notify him that she needed a patient trainer as a result of her depression.[6] Form Compl. Att. ¶ 7. Following her meeting with Schmatz, MacEntee describes her fourth and final trainer, Patty Savino, as "patient." Form Compl. Att. ¶ 12. MacEntee mentioned that Savino "had the patience [she] needed and [she] excelled quickly." Form Compl. Att. ¶ 12.

Before MacEntee completed her training with Savino, Savino requested to be transferred to another sector. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opposition Motion") Ex. N at 5. Savino said that MacEntee would be ready to take her inspection certification within two weeks. Form Compl. Att. ¶ 16. Following Savino's transfer, MacEntee also requested to be transferred. Schmatz failed to respond to MacEntee's request. Form Compl. Att. ¶ 16; Opp'n Mot. 23.[7]

Shortly thereafter, MacEntee was notified in IBM's break-room in the presence of coworkers of her next year's raise. Form Complaint Att. ¶ 17. MacEntee did not receive as much of a raise as she had hoped, and MacEntee discussed her raise with Schmatz. Form Complaint Att. ¶ 17. Schmatz told MacEntee that in the screening department, pay raises were linked to performance. MacEntee questioned Schmatz's decision and he allegedly "displayed hostility towards [her]." Form Complaint Att. ¶ 17. Schmatz explained that MacEntee's lower-than-expected raise was justified because MacEntee was a poor performer, had difficulty getting along with her trainers, that she had outbursts in the workplace, and a number of unauthorized absences. Form Complaint Att. ¶¶ 4, 17–23, 26, 32. Afterwards,

---

**6.** In her Administrative Complaint and Second Amended Complaint, MacEntee does not indicate that she mentioned her need for a patient trainer to Schmatz. *See* Form Compl. Att. ¶ 7. However, in MacEntee's Opposition Motion she indicates that she did mention her need for a patient trainer to Schmatz. *See* Opp'n Mot. 20.

**7.** Plaintiff failed to number the pages in Plaintiff's Opposition to the Motion. The Court has hand numbered the pages beginning with the first page following Plaintiff's table of exhibits.

Schmatz allegedly "coerced" MacEntee to speak to his manager about her performance, which made MacEntee feel "humiliated." *Id.* Also, MacEntee alleges that Schmatz intimidated her and communicated in an argumentative manner during this conversation, including at least one comment "ridicul[ing her] disability."[8] Form Complaint Att. ¶ 18. MacEntee claims Schmatz's attitude and comments caused her to cry and caused her emotional distress. Form Complaint Att. ¶ 30. She claims it exacerbated her depression. Form Complain Att. ¶ 15.

MacEntee complained about Schmatz to IBM's Human Relations Department in June 2007 but IBM did not immediately investigate. Form Complaint Att. ¶ 26.

On or around July 2007, MacEntee left the workplace feeling "too upset" to continue and requested paid short-term disability leave through the end of the month. Aff. of Dr. Marian Louis in Opp'n Mot. Ex. O at 1. In response to her request, IBM requested medical documentation to confirm her eligibility to continue receiving her benefits and salary under the Family and Medical Leave Act (FMLA). Opp'n Mot. Ex. O (Req. for Documentation at 1). IBM stated that if it did not receive a certification from a health care provider indicating MacEntee's need for leave from work, IBM would consider MacEntee's absence not covered under the FMLA and "may consider [MacEntee] to have abandoned [her] job." Req. for Documentation at 1; *see* Def.'s Mem. of Law in Supp. of its Mot. to Dismiss P.'s Second Am. Compl. ("Motion to Dismiss") Ex. B at 1–2 ("Administrative Complaint"). MacEntee completed the required paperwork and re-

turned to work on August 1, 2007. *See* Administrative Compl. 1.

On August 8, 2007, MacEntee filed a verified Administrative Complaint with the NYSDHR and the EEOC, claiming discrimination by IBM on the basis of disability and retaliation. *See* Administrative Compl. at 1–2. In her Administrative Complaint, MacEntee alleged: (1) her severe depression constituted a disability under the ADA; (2) IBM discriminated against her by failing to accommodate her disability; and (3) IBM created a hostile work environment that exacerbated her condition. *See* Administrative Compl. at 1–2.

On February 27, 2008, after conducting an investigation into MacEntee's allegations, the NYSDHR issued a Determination and Order, finding that there was no probable cause to support MacEntee's discrimination allegations. *See* Def. Mot. to Dismiss Ex. C at 1–2. The NYSDHR's investigation revealed: (1) MacEntee left work early without informing her manager or explaining her absence; (2) MacEntee's medical form revealed no restrictions on her ability to perform her job or any requests or instructions for accommodations; (3) only 5 out of 15 employees received an additional 3% salary increase; and (4) there was no nexus between IBM's actions and MacEntee's allegation of discrimination. Def. Mot. to Dismiss Ex. C at 2. The EEOC adopted the NYSDHR findings and issued MacEntee a right-to-sue letter on April 8, 2008. Form Compl. III.B. Thereafter, this action was filed.[9]

After she filed the Complaint in this Court, MacEntee alleges that Schmatz "was trying to retaliate against me by watching to make sure I did not abuse my

---

8. Despite her voluminous submissions, Plaintiff fails to indicate the content of Schmatz disability related comment.

9. MacEntee did not appeal the NYSDHR's findings in New York State Supreme Court pursuant to N.Y. Exec. Law § 298.

start/stop/lunch/break times (which is grounds for immediate dismissal), ..." Pl. Opp'n Mot. 14. MacEntee alleges that she was being "set-up" to look like a poor performer that would "lead to an unsatisfactory evaluation and termination." Form Compl. Att. ¶ 16.

In April 2008, Schmatz was transferred to another department and MacEntee was assigned to a new project manager. Aff. of Dr. Marian Louis in Opp'n Mot. Ex. O at 1; Form Compl. Att. ¶ 22. MacEntee alleges her new project manager also made her more depressed by sending her an email that included her prior performance evaluations. Form Compl. Att. ¶ 22.

## STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

 "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("It is well established ... that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir.2006); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

### B. Failure to State a Claim Pursuant to Rule 12(b)(6)

 To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal quotation marks omitted). However, this "does not exempt *pro se* parties from compliance with the relevant rules of procedural and substantive law." *Bisson v. Martin Luther King Jr. Health Clinic*, —— Fed.Appx. ——, ——, 2008 WL 4951045, at *1, 2008 U.S.App. LEXIS 23977, at *2 (2d Cir.2008) (internal citations omitted).

 The court's task in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted). The court must accept all well-pleaded factual allega-

tions in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). In deciding a motion to dismiss, the Court is not limited to the face of the complaint. The Court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007).

## TITLE V AND TITLE VII OF THE CIVIL RIGHTS ACT

■ In her response papers, Plaintiff indicates that she did not intend to bring claims against Defendant under the Civil Rights Act of 1964 but checked the box in the *pro se* form in error. Opp'n Mot. 1. Because this is a knowing, voluntary, and uncoerced statement by Plaintiff, this Court will treat Plaintiff's response as a proper withdrawal of her Civil Rights Act claims. *See Baber v. Runyon*, 1998 WL 912065, at *5–6 (S.D.N.Y.1998) (voluntary withdrawal of claims where plaintiff did not allege that she was "tricked, threatened, coerced, or intimidated" into signing settlement agreement); *Brown v. City of New York*, 869 F.Supp. 158, 170–71 (S.D.N.Y.1994) (no jurisdiction to hear claims where plaintiff voluntarily requested withdrawal of claims, but later sought to rescind the withdrawal).

■ Even if not withdrawn, Plaintiff's Civil Rights Act claims must be dismissed. Title VII prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2011). Title VII does not encompass claims for employment discrimination on the basis of disability. *See, e.g., Chen*

*v. Citigroup Inv., Inc.*, 2004 WL 2848539, at *2 (S.D.N.Y.2004). Plaintiff's Administrative Complaint and Second Amended Complaint only allege discrimination and retaliation on the basis of disability and therefore Plaintiff has failed to properly state such a claim. *See id.* Further, Title V is comprised solely of procedural amendments to prior legislation and creates no private cause of action. *Johnson–McCray v. Bd. of Ed.*, No. 86–CV–6772, 1987 WL 4912, 1987 U.S. Dist. LEXIS 4591 (S.D.N.Y.1987). Therefore, this Court lacks subject matter jurisdiction over Plaintiff's Title V claim, *see id.* (dismissing Plaintiff's Title V claim under Rule 12(b)(1)), and has failed to state a claim upon which relief pursuant to Rule 12(b)(6) can be granted under Title VII.

Accordingly, Plaintiff's claims under Title VII and/or Title V of the Civil Rights Act of 1964 are dismissed.

## ADA CLAIMS

The American's with Disabilities Act of 1990 prohibits a covered employer from discriminating against "a qualified individual on the basis of disability in regards to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2011). Discrimination under the ADA includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, *id.* § 12112(b)(5)(A), and denying equal terms, conditions and privileges of employment because of an individual's disability, *id.* § 12112(a). The ADA also prohibits retaliation against an individual who has "opposed any act or practice made unlawful under the ADA." § 12203. Plaintiff alleges that IBM violated the

ADA by failing to accommodate her disability, harassing her, and retaliating against her when she filed the instant suit.

### 1. Failure to Accommodate

■ To establish a prima facie claim for failure to reasonably accommodate, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodations, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F.Supp.2d 567, 577 (S.D.N.Y.2008) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.2004)).

■ Plaintiff has alleged, and Defendant does not dispute, that Plaintiff's clinical depression amounts to a disability under the ADA. Courts in this circuit have found that depression may qualify as a disability for purposes of the ADA, "provided that the condition is not a 'temporary psychological impairment,'" *Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 539 (S.D.N.Y.2009) (quoting *Oblas v. Am. Home Assur. Co.*, 1999 WL 759026, at *2 (2d Cir.1999)), and the condition substantially limits a major life activity, *see Mabry v. Neighborhood Defender Serv.*, 769 F.Supp.2d 381, 399–400, 2011 WL 335867, at *15, 2011 U.S. Dist. LEXIS 10976, at *43–44 (S.D.N.Y.2011). Plaintiff alleges that her medically diagnosed depression, for which she was provided six months of short-term disability leave prior to her transfer to the East Fishkill location, substantially limited her "thinking, learning, and concentrating." Form Compl. Att. ¶ 8. The Court will assume that Plaintiff has pled facts sufficient to establish that her condition constitutes a disability within the meaning of the ADA.

■ To establish a prima facie case under the second prong, a plaintiff must show that the defendant had notice of her disability. *See Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir.1995); *Williams v. New York City Housing Authority*, 2009 WL 804137, at *7 (S.D.N.Y.2009). An employee must demonstrate that she suffers from a disability and tell his employer about her disability before her employer has "any obligation to accommodate the disability." *See Santiago v. New York City Police Dept.*, 2007 WL 4382752, at *8 (S.D.N.Y.2007); *see also Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 86 (2d Cir.2000) ("If [Plaintiff's] requests for accommodations did not provide enough information for the Board to determine she was disabled, the Board would not be liable."); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 725 (2d Cir.1994) ("[A]n employer is only responsible for employment decisions based on information available to it."). It is also the employee's responsibility to demonstrate to an employer that she needs an accommodation for reasons related to a medical condition disability. *See Williams*, 2009 WL 804137, at *7 ("[W]ithout adequate knowledge of her medical condition," the Defendant was "not in a position to even offer, let alone refuse, a reasonable accommodation to plaintiff" (quoting *Thompson v. City of New York*, 2002 WL 31760219, at *9 (S.D.N.Y.2002))).

■ It can be inferred that IBM had notice of her depressive condition in 2005 when she took short-term leave. However, given the temporary nature of depression, there is no allegation that IBM was on notice of MacEntee's continued depression upon her return. *See Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 540 (S.D.N.Y. 2009) (finding that Plaintiff's postpartum depression lasted until she returned to work from disability leave).

Her informing her manager in 2006 that she was depressed also does not provide sufficient notice, or demonstrate a request for an accommodation that IBM refused, under the ADA because she in no way inferred that her depression required any accommodations. In her Second Amended Complaint, Plaintiff alleges it was IBM's duty to "explor[e] my limitations, and find and implement a reasonable accommodation." Form Compl. Att. at ¶ 12. However, unlike disabilities that are visible to an employer, the presence, duration and ever-varying severity of depression cannot be adequately perceived or accommodated unless an employee informs in some manner her employer of her limitations as a result of such a disability. *See, e.g., Heilweil*, 32 F.3d at 725. MacEntee also did not provide IBM with medical documentation that indicated she needed any accommodations. If MacEntee needed an accommodation, it was her responsibility to bring that need to her employer's attention. By failing to provide medical documentation and failing to notify her supervisor of her unknowable limitations, IBM had no notice of her disability and was not given the opportunity to offer, or refuse, MacEntee reasonable accommodations.

██ Further, Plaintiff does not allege that she requested any accommodations (Form Complaint Aff. ¶ 12) ("although at the time I did not know about accommodations or that I was requesting one"). According to her Second Amended Complaint, in a meeting with her supervisor, MacEntee indicated that she suffered from depression, mentioned her need for a "patient trainer," but did not mention that this request was because of her depression. Form Compl. Att. ¶¶ 12–13. Defendants cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations. *See e.g., Williams*, 2009 WL 804137, at *7. Also,

even if MacEntee provided adequate notice, her request for a "patient trainer" cannot form the basis of a failure to accommodate claim because IBM provided her with such a trainer. *See Monterroso*, 591 F.Supp.2d at 577.

██ Plaintiff also alleges that her request to be transferred was a request for an accommodation that IBM failed to accommodate. Second Am. Compl. ¶ 16. As before, Plaintiff fails to indicate that her employer had knowledge of any disability-related reasons for her request. Just before requesting to be transferred, MacEntee's fourth and final trainer indicated to her supervisor that MacEntee would be capable of taking her certification exam within two weeks of her training. Her trainer's remarks that MacEntee would be prepared to take her examination indicates that IBM would not reasonably assume her request to be transferred was a request for an accommodation of a disability. *See Cusack v. Delphi Corp.*, 686 F.Supp.2d 254, 257 (W.D.N.Y.2010) (finding that an employer who believed a depressed employee was able to work as evidence that he was not disabled).

Plaintiff has failed to allege that Defendants either had notice of a disability or refused to make reasonable accommodations. Therefore, she has not stated a claim for discrimination for a failure to accommodate under the ADA. Accordingly, Plaintiff's failure to accommodate claim under the ADA is dismissed.

## 2. Harassment Claim

██ Plaintiff brings hostile work environment claims under the ADA. Under the ADA, a plaintiff must demonstrate that the alleged harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Howard v. City of New York*, 302 F.Supp.2d 256 (S.D.N.Y. 2004) (citing *Meritor Sav. Bank, FSB v.*

*Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999). Plaintiff must allege sufficient facts establishing that "she was subjected to the hostility because of her membership in a protected class." *Id.*

■ After a thorough analysis of Plaintiff's voluminous submissions, Plaintiff's sole allegation supporting her disability harassment claim is that her supervisor made a single comment ridiculing her disability.[10] This single, disability-related comment appears to be neither sufficiently severe nor pervasive enough to alter the terms of her employment. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir.1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination.").

■ Rather, Plaintiff alleges that she felt coerced, intimidated, and humiliated based on her supervisor's assessment of her performance and related performance management, as she was a "poor performer" relative to her peers. These performance-related assessments that indicated MacEntee failed to get along with her co-workers and was a poor performer are wholly unrelated to her severe depression. *See, e.g., Mabry*, 769 F.Supp.2d at 392–93, 2011 WL 335867, at *8, 2001 U.S. Dist. LEXIS 10976, at *22–23 (citing *See Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir.2001), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)) ("Negative evaluations or reviews, without accompa-

nying tangible consequences, do not constitute materially adverse action altering the conditions of employment."). Therefore, they cannot form the basis of a hostile work environment claim. Further, Schmatz's alleged conduct is insufficiently severe or pervasive to create an objectively hostile or abusive work environment sufficient to establish a prima facie hostile work environment claim. *See Leung v. New York Univ. Med. Ctr.*, 2010 WL 1372541, 2010 U.S. Dist. LEXIS 33265 (S.D.N.Y.2010). This claim should be dismissed.

### 3. Retaliation

■ In Plaintiff's Supplemental Response to Defendant's Motion to Dismiss, Plaintiff contends that "if the Court does not feel that my harassment is not [sufficient to establish a harassment claim], I respectfully request that I be considered for Disability Harassment under Title V of the ADA." Title V of the ADA contains miscellaneous provisions that are not explicitly covered in other parts of the ADA. *See* § 12201 *et seq.* Under Title V of the ADA, an employer is prohibited from retaliating or coercing employees who exercise, or intend to exercise, their rights under the ADA, 42 U.S.C. § 12203(b). This Court will treat Plaintiff's request as a motion for leave to amend her complaint to add a wholly new claim.

■ Federal Rules allow a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). Afterward, a party may amend its pleading "only by leave of court or by written consent of the adverse party." *Id.* This Court will construe Plaintiff's request as a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a). *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652

---

**10.** Plaintiff fails to allege specific information regarding this comment. She refers to the comment throughout her submissions as a "cruel comment" related to her disability.

(1972) (*per curiam*). Federal Rules provide that leave to amend "shall freely be given when justice so provides." Fed. R.Civ.P. 15(a). However, a Court should not grant a plaintiff the right to amend when such amendment would be futile. *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir.2003), *rev'd on other grounds*, 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005).

An amendment is futile when it cannot "withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* In deciding whether an amendment is futile, the court uses "the same standard as those governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991). Thus, this Court applies the same standard here as it would on a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). *See id.*

The ADA prohibits an employer from retaliating against a qualified employee. Specifically, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge ..." *Monterroso*, 591 F.Supp.2d at 582 (citing 42 U.S.C. § 12203(a)). "Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases." *Id.* (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).[11] In order to establish a prima facie case of retaliation, a plaintiff must show that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer

was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Monterroso*, 591 F.Supp.2d at 583 (citing *Treglia*, 313 F.3d at 719).

Plaintiff fails to allege sufficient facts that IBM or its representatives took any adverse employment action in retaliation for her filing of her complaint. Plaintiff's allegations appear to be that her supervisor ensured that Plaintiff clocked-in and -out of work at the appropriate times and scrutinized Plaintiff's workplace conduct. Def. Opp'n Mot. 14. These acts do not constitute an "adverse employment action" because they are common and appropriate ways an employer may monitor its employees. *See Mabry*, 769 F.Supp.2d at 392–93, 2011 WL 335867, at *8, 2011 U.S. Dist. LEXIS 10976, at *22 (finding that six-weeks of isolated and excessive supervision of plaintiff relating to his work on a project does not constitute a materially adverse employment action). Further, while close monitoring of a plaintiff may "cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Castro v. N.Y.C. Bd. of Educ. Pers.*, 1998 WL 108004, *7 (S.D.N.Y.1998). Her claim is wholly insufficient to survive a 12(b)(6) motion. Therefore it would be futile to allow Plaintiff leave to amend her complaint. Plaintiff's motion to amend is therefore denied.

## NYSHRL CLAIMS

Plaintiff's claim for disability discrimination pursuant to NYSHRL

---

**11.** Under the burden shifting analysis established in *McDonnell Douglas*, once a plaintiff makes out a prima facie claim of discrimination, the burden of production shifts to the employer to demonstrate a legitimate, nondiscriminatory purpose for the employment decision. *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the nondiscriminatory reason was merely pretext for discrimination. *Id.* at 804–05, 93 S.Ct. 1817.

§ 290 is barred by the election of remedies doctrine. The NYHRL provides,

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... and such other remedies as may be appropriate ... *unless such person had filed a complaint hereunder or with any local commission on human rights.*

N.Y. Exec. Law § 297(9) (McKinney 2001) (emphasis added). Under New York law, a claim "once brought before the [NYSDHR], may not be brought again as a plenary action in another court." *York v. Association of Bar of City of New York,* 286 F.3d 122, 127 (2d Cir.2002) (citing *Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 882 (2d Cir.1995)). The only exception to this rule is when the agency dismisses the claim for administrative convenience rather than dismissing for a lack of probable cause. *See Anatsui v. Food Emporium,* 2000 WL 1239068 at *5 (S.D.N.Y.2000). Because the NYSDHR dismissed her claims for a lack of probable cause, Plaintiff is barred from re-litigating the same claims in this Court. *See Moodie,* 58 F.3d at 883–84. This Court therefore lacks subject-matter jurisdiction over Plaintiff's NYSHRL claims and those claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[12]

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff contends that defendant intentionally caused her emotional distress for which she should be compensated. *See* Form Compl. Aff. ¶ 5. The requirements for stating a viable claim for intentional infliction of emotional distress are "rigorous and difficult to satisfy." *See Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350, 353 (N.Y. 1993). Specifically, plaintiffs must allege that defendants engaged in "extreme and outrageous conduct," either with the intent to cause plaintiffs severe harm or with indifference to the substantial likelihood that such harm would occur. Plaintiff must also allege that she actually suffered severe emotional distress, and that there is a causal connection between defendants' conduct and plaintiffs' injuries. *Id.* at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699. Plaintiff may not rely on "conclusory, boilerplate allegations" to support her intentional infliction of emotional distress claim. *See Ruffolo v. Oppenheimer & Co.,* No. 09 civ 4593, 1991 U.S. Dist. LEXIS 1485, 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991), aff'd. 949 F.2d 33 (2d Cir.1991). Moreover, allegations that defendant unfairly criticized plaintiffs' job performance "fall far short of the extreme and outrageous conduct that is actionable as an intentional infliction of emotional distress." *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1158 (2d Cir.1993).

MacEntee alleges numerous actions by IBM which she claims were designed intentionally to cause her severe emotional distress. These allegations consist of: (1) a pay raise lower than she

---

12. In her Second Amended Complaint, Plaintiff alleges that the NYSDHR failed to investigate her claims and that she was denied an opportunity to be properly heard. *See, e.g.,* Opp'n Mot. 12–15 ("Defendant's (IBM's) "no probable cause" decision awarded by the NYSDHR is worthless"). However, Plaintiff had the opportunity to appeal the NYSDHR's no probable cause determination by filing to the Supreme Court of the State of New York within sixty days of the NYSDHR determination. § 298. Plaintiff failed to appeal NYSDHR's adverse ruling and is thereby justly barred from re-litigating those claims in this Court.

had expected; (2) indication that she was a "poor performer" in relation to her co-workers causing her to "feel humiliated"; (3) indication that she did not "get along with anyone"; (4) fear that she was going to be terminated because of her poor performance; and (5) that her supervisor intimidated her and communicated in an argumentative manner during her performance-related conversations including one comment "ridicul[ing her] disability." Plaintiff alleges that defendants' conduct caused her to become "severely upset" with Schmatz and upset that his superiors at IBM failed to intervene. Form Compl. Att. ¶ 5. Such conclusory allegations and limited occurrences do not rise to the level of "extreme and outrageous conduct" and are therefore insufficient to state a cognizable claim for intentional infliction of emotional distress. *See Leung v. New York Univ.*, 2010 WL 1372541, at *9, 2010 U.S. Dist. LEXIS 33265, at *27 (allegations that defendants unfairly criticized plaintiffs' job performance "fall far short of the extreme and outrageous conduct that is actionable as an intentional infliction of emotional distress"). While the knowledge of being terminated and being issued a smaller-than-expected raise upset Plaintiff, the actions of her employer cannot be said to constitute extreme and outrageous conduct. *See id.*

Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress claim is granted.

### CONCLUSION

Defendant's motion to dismiss Plaintiff's Second Amended Complaint is GRANTED. Plaintiff's complaint is dismissed in its entirety.

SO ORDERED.