| |
|---|
| **Vargas v City of New York** |
| 2025 NY Slip Op 32298(U) |
| June 30, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 151379/2024 |
| Judge: Ariel D. Chesler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. ARIEL D. CHESLER**

*Justice*

PART 51M

-------------------------------------------------------------------------------X

DIANA VARGAS,

Plaintiff,

- v -

CITY OF NEW YORK, SCOTT O'NEIL, BRIAN MCGEE

Defendant.

-------------------------------------------------------------------------------X

INDEX NO. 151379/2024

MOTION DATE 06/24/2024

MOTION SEQ. NO. 001

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

were read on this motion to/for _____ DISMISSAL _____.

In this gender and race discrimination action, defendants City of New York ("the City"), Scott O'Neill ("O'Neill"), and Brian McGee ("McGee") collectively make this pre-answer motion for dismissal of the complaint for failure to state a claim (CPLR § 3211 [a] [7]). Plaintiff Diana Vargas opposes the motion. The court grants the motion in part and denies it in part for the reasons below.

I. Background

a. Discrimination

According to the complaint (NYSCEF Doc. No. 7), in 2004, the New York City Police Department ("NYPD") hired plaintiff as a criminalist in its laboratory. Plaintiff alleges that she received stellar reviews in her performance evaluations. In 2005, plaintiff completed her training in controlled substance, and she was assigned to the Controlled Substance Analysis Section ("CSAS") as a bench analyst. As a result of her fine performance, she received promotions – first to Criminalist II, then to Criminalist III – and, in 2012, to Criminalist IV. Plaintiff was again

[* 1]

reassigned in 2013, this time to the Criminalistics section, where she supervised the entire chemistry unit. The following year she was promoted to the position of Police Laboratory Manager of the Criminalistics section, where she supervised the Chemistry, Latent Print Development, Question Documents, Intoxicated Driver Testing (IDTU), and Toxicology units. One of only six assistant directors in the NYPD laboratory, she also was the first Hispanic person to attain this position. Ultimately, in 2018, plaintiff was promoted to the position of Assistant Director. The complaint notes that none of the other five assistant directors were Hispanic Women. Instead, there allegedly were one Asian woman, two white women, and two white males (*id.*, ¶ 33).

The complaint suggests that the discriminatory and harassing conduct by O'Neill began around June 2022, when plaintiff informed him "that some of the analysts were feeling scared, left out, and offended of the then Police Commissioner email about the George Floyd incident and Black Lives Matter" (*id.*, ¶ 42).[1] According to the complaint, O'Neill dismissed her comments altogether, but held an emergency zoom meeting on the subject after a white female assistant director raised the same concerns. Subsequently, O'Neill regularly held meetings with the five other assistant directors regarding the issue, but he excluded plaintiff from the meetings and instructed the other assistant directors "to keep all information in these meetings from the Plaintiff" (*id.*, ¶ 49).

Next, the complaint notes that when the Firearms Analysis Section fell behind in processing evidence, O'Neill directed plaintiff to work with the supervisor, Lieutenant Matthew Strong (Strong), to clear up the backlog. According to the complaint, O'Neill realized that Strong would not want to take orders from a woman, and it was due to O'Neill's discriminatory animus

---

[1] The complaint does not provide further information about the content of the email.

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

Page 2 of 18

against plaintiff that he assigned her to this task. Further, the complaint states that plaintiff significantly cleared up the backlog, but O'Neill credited Strong, a white male, rather than plaintiff, a Hispanic woman.

Things purportedly got worse when her supervisor, Deputy Director Eliot Springer (Springer) resigned from his position. According to the complaint, this was because Springer had served as a buffer between plaintiff and O'Neill. After Springer's resignation, O'Neill told plaintiff that she was under investigation for asking new hires in her department to do the schoolwork she had been assigned while studying for her Master of Science degree in Investigations, with a concentration in criminal investigation, from the University of New Haven. The complaint alleges that O'Neill screamed at plaintiff and berated her when she tried to discuss the charge and to explain that her conduct did not violate any academic or City code of conduct. Further, when she tried to discuss the matter with McGee, he slammed the door in her face, although later that day she met with McGee and Captain Benjamin Lee and discussed her concerns. Allegedly, McGee was required to report plaintiff's complaint to the internal affairs department, but he failed to do so, and "as such is complicit in the misconduct" (*id.*, ¶ 125). The complaint further alleges that plaintiff lost the opportunity to replace Springer as Deputy Director because the investigation against her was pending when the position became open.[2]

The complaint next accuses O'Neill of pressuring plaintiff to change her performance evaluation of a subordinate after the subordinate filed an appeal. The complaint notes that the subordinate was a white male. When plaintiff agreed to change some but not all of the challenged comments, O'Neill "ignored Department Policy" and sent the appeal to McGee for

---

[2] Indeed, the investigation continued as recently as July 11, 2023, when the internal affairs department formally interviewed plaintiff (*see id.*, ¶ 216).

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

Page 3 of 18

resolution (*id.*, ¶ 174). At a meeting on the matter, McGee stated that he agreed with plaintiff about the evaluation, but he nonetheless forwarded the appeal to the next level of review.

The complaint details events surround the discovery of a safety issue in the Latent Print Development Unit, which was under plaintiff's purview. The complaint states that the analysts falsely asserted that plaintiff had instructed them to stop keeping records, and O'Neill removed her as supervisor and placed Strong in charge. Then, when under Strong the backlog in the unit increased exponentially, O'Neill blamed her for the backlog and asked her for suggestions as to how to reduce it.

According to the complaint, O'Neill again demonstrated discriminatory animus when, On August 1, 2023, the police commissioner's office selected plaintiff to participate in the Civilian Executive & Leadership Development Workshop (the leadership workshop). The complaint suggests that, due to this animus and his resentment over the selection, on September 6, 2023, O'Neill issued disciplinary charges indicating that plaintiff had participated in prohibited conduct. When, on September 11, 2023, the mentoring unit's office of equity and inclusion chose her to participate in its Path to Mentorship Program as a mentor, O'Neill allegedly was furious and responded by revoking plaintiff's permission to work as an adjunct professor at John Jay college.

The complaint also asserts that she attended the Northeastern Association of Forensic Science convention in November 2023 at her own expense, and that she also used vacation leave for this purpose. Allegedly, O'Neill approved all the other assistant directors to attend. As such, the department paid their expenses and they did not have to use any vacation time. The complaint states that the other assistant directors were not Hispanic women, and that O'Neill's

151379/2024  VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Page 4 of 18
Motion No.  001

4 of 18

[* 4]

discriminatory animus was the reason that plaintiff was treated differently and deprived of approval.

   b.   Retaliation.

The complaint asserts that shortly after this, defendants engaged in retaliatory conduct. At the leadership workshop, a pregnant woman complained to plaintiff about O'Neill's purported pregnancy discrimination. As a mandated reporter, plaintiff filed a formal complaint on the woman's behalf. The following day, and allegedly in retaliation for the complaint, disciplinary charges and specifications were served on plaintiff, stating that she falsified department records. In early October, plaintiff filed a complaint with the Office of Equal Employment Opportunity (OEEO) on behalf of a female Hispanic employee's contention that a nonparty manager had discriminated against her based on her race, and on October 17, 2023, plaintiff filed a discrimination complaint on behalf of an elderly and disabled Jewish employee. Shortly thereafter, O'Neill drafted an internal memorandum "requesting that Plaintiff be transferred out of the NYPD's Laboratory due to her pending charges" (*id.*, ¶ 329). The complaint alleges that the motive was retaliatory and that O'Neill and McGee circumvented the requisite trial process to effectuate the retaliation.

Plaintiff approached the legal bureau attorney, David Goldfarb (Goldfarb), complaining about discrimination and retaliation. [3] Goldfarb, though a mandatory reporter, did not file a complaint in response to plaintiff's charges. Instead, he suggested that plaintiff transfer out of the Laboratory, away from O'Neill's supervision. Following the attorney's suggestion, plaintiff contacted Maria Acevedo (Acevedo), the deputy director of Personnel. Acevedo conducted a search, but found that there were no managerial positions available. Plaintiff was willing to give

---

[3] It appears that plaintiff went to Goldfarb in October, between the various discrimination complaint fillings.

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**                                    **Page 5 of 18**
  **Motion No.  001**

up her title as Managerial Criminalist, but only if, as Acevedo had intimated, she could do so without losing any pay or benefits.

Instead, on November 15, 2023, plaintiff was formally transferred out of the laboratory and to the Crime Scene Unit, and she was stripped of her title. Allegedly, O'Neill initiated the transfer and McGee approved it, although O'Neill's goal was to remove plaintiff from the laboratory altogether. Moreover, contrary to the assurances of Acevedo, plaintiff learned that the removal of her managerial title "could come with a reduction of 20% of her salary" (*id.*, ¶ 404). The complaint, which is dated January 25, 2024, states that "[t]o date, the Plaintiff has not been assigned any duties or responsibilities and remains isolated to the one floor in the building, the second floor" (*id.*, ¶ 448). Further, it contends that the discriminatory conduct was ongoing. Specifically, it states, "Plaintiff has been demoted, stripped of her responsibilities, harassed, subjected to unwarranted discipline, denied promotions, and other lucrative positions due to her race." (*id.*, ¶ 450).

On December 2, 2023, after she had been stripped of her managerial status, plaintiff filed an OEEO complaint for retaliation and discrimination on her own behalf. Detective Kathy Perez (Perez), who interviewed plaintiff on December 11, 2023, told plaintiff that she was not listed as the reporter of the September and October 2023 discrimination OEEO complaints against O'Neill. Further, she stated that Perez and a sergeant continued the interview, but "interrupted Plaintiff numerous times to confuse and frustrate her" (*id.*, ¶ 436). The complaint asserts that the two interviewers did not take plaintiff's charges seriously and they pressured her to dismiss the complaint.

Based on the above allegations, the complaint asserts Count I, for gender discrimination in violation of the New York State Human Rights Law (SHRL); Count II, for hostile work

151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL                    Page 6 of 18
   Motion No. 001

6 of 18

environment based on gender in violation of the SHRL; Count III, for racial discrimination in violation of the SHRL – specifically, the denial of promotional opportunities; Count IV, for hostile work environment based on race in violation of the SHRL; Count V, for retaliation in violation of the SHRL; Count VI, for gender discrimination in violation of the New York City Human Rights Law (CHRL); Count VII, for hostile work environment based on gender in violation of the CHRL; Count VIII, for racial discrimination in violation of the CHRL; Count IX, for hostile work environment based on race in violation of the CHRL; Count X, for retaliation in violation of the CHRL; Count XI, for sex and gender discrimination in violation of the CHRL; Count XII, for strict liability for race discrimination in violation of the CHRL; and Count XIII, for strict liability for retaliation in violation of the CHRL. The first four claims assert disparate treatment based on plaintiff's race and gender.

II.   Discussion.

a.  Discrimination.

In their motion to dismiss, defendants assert that the complaint does not state a cause of action for race or gender discrimination. More specifically, citing cases such as *Askin v Department of Educ. Of the City of N.Y.* (110 AD3d 621, 622 [1st Dept 2013]), they contend that the actions about which plaintiff complains do not give rise to an inference of discriminatory motive under either the SHRL or the CHRL. Instead, citing *Brager v Quality Bldg. Servs. Corp.* (2022 NY Slip Op 31629 [U], **10, 13 [Sup Ct, NY County 2022]) as precedent, defendants state that plaintiff merely makes conclusory assertions that because she is a member of two protected classes, race and gender, any negative conduct that targeted her has a discriminatory motive.

151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 7 of 18

[* 7]

Defendants also challenge plaintiff's allegation that the alleged derogatory comments by O'Neill raise an inference of discrimination. For one thing, they point out that a contention that defendants made negative comments, by itself, does not create such an inference. Thus, the statement that O'Neill screamed at her is insufficient. For another, citing *Pelepelin v City of New York* (2019 NY Slip Op 31597 [U], [Sup Ct, NY County 2019], *modified on other grounds* 189 AD3d 450 [1st Dept 2020]), they point to some of the allegedly abusive comments by O'Neill – that plaintiff was loud and like a "bull in a China shop" (NYSCEF Doc. No. 7, ¶ 56), that she was untrustworthy (*id.*, ¶ 144), and that she was told to work with Strong, a white male, although she outranked him, and that O'Neill allowed Strong to act as though he were in charge (*see id.*, ¶¶ 61, 73) – and assert that these statements have nothing to do with plaintiff's race or gender.

Additionally, defendants state that she does not show that other members of her gender were treated in a discriminatory fashion. For example, they note that according to the complaint, Mary Eng and Nicole Capitali-Provino, who also were female assistant directors, were not excluded from department meetings and did not encounter difficulties getting approval to perform off-duty work or to attend the conference. Therefore, they claim that plaintiff has not satisfied her burden on this issue. Similarly, defendants contend that the complaint does not assert facts that, if proven, would raise an inference of racial discrimination because Eng, who also is not white, was not treated in a similarly negative manner. They further contend that there are statements in the complaint that are confusing and/or contradictory, and this renders its allegations less credible.

Defendants also argue that plaintiff has not stated a viable claim for hostile work environment. They note that under the SHRL, plaintiff's complaint must allege more than a single hostile comment, but instead must assert that the environment was "permeated with

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**                    **Page 8 of 18**
  **Motion No.  001**

8 of 18

intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of her employment" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 310 [2004] [internal quotation marks and citation omitted] [finding that the use of three epithets over nine years was insufficient]). To survive dismissal of her hostile work environment claim under the CHRL, defendants point out, plaintiff must allege that she was not treated as well as other employees due to her race or gender. Here, defendants contend that the complaint does not point out a single hostile comment or condition that relates to plaintiff's race or gender. Instead, they state that plaintiff complains of comments that are not related to her sex and gender. Further, they allege that she merely alleges petty slights and trivial inconveniences, such as her supervisor's failure to include her in department meetings on discrimination, his decision to give a white man credit for her work, his decision to stop speaking with plaintiff, and his comment that she had to work every day including Friday, when she taught a class off-site; and McGee's antagonizing manner when he questioned her.[4]

Citing *Skariah v City of New York* (2020 NY Slip Op 31890 [U], * [Sup Ct, NY County 2020]), a decision granting summary judgment where the plaintiff, a civilian employee, had applied for positions for uniformed employees, defendants intimate that plaintiff's complaint does not adequately assert that the failure to promote plaintiff was discriminatory because it does not allege that she was passed over in favor of a less-qualified individual. They further state that plaintiff's assertion that she could not apply to the position because of pending disciplinary charges fails because, according to documentation, those charges were not filed until September

---

[4] Defendants' reliance on *Mabry v Neighborhood Defender Serv.* (769 F Supp 2d 381, 399 [SD NY 2023]) is misplaced, as the discussion on which they rely relates to the question of whether exclusion from management meetings constitutes an adverse employment action where there are no negative consequences. Here, the exclusion from the meetings is one facet of the alleged discrimination, and it is set forth alongside other contentions.

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

Page 9 of 18

[* 9]

7, 2023, long after the deputy director became available (*see* NYSCEF Doc. No. 8 [Charges and Specifications]).

In opposition, plaintiff contends that her allegations concerning race discrimination, gender discrimination, and hostile work environment are sufficient under CPLR § 3211 (a) (7). Citing *Harrington v City of New York* (157 AD3d 582, 584 [1st Dept 2018]), she states that "a claim of invidious discrimination under the NYCHRL [must allege] (1) that he/she is a member of a protected class, (2) that he/she was qualified for the position, (3) that ... he/she was treated differently or worse than other employees (under [the SHRL]), and (4) that the adverse or different treatment occurred under circumstances giving rise to an inference of discrimination." Further, relying on *Mihalik v Credit Agricole Cheuvreux N. Am. Inc.* (715 F3d 102, 109 [2d Cir 2013]), she emphasizes that courts interpret the CHRL as broadly as possible. Instead of the requirement that a plaintiff show a causal connection between the adverse action and discriminatory animus, a court must determine whether the individual was treated less well because he or she was in a protected class. Plaintiff cites *Serrano v City of New York* (226 AD3d 575, 575-576 [1st Dept 2024]), in which the First Department, reversing the trial court, found that although the sole remaining defendant did not make discriminatory comments, there were sufficient allegations of disparate treatment to raise an inference of discriminatory animus. Here, too, plaintiff alleges that she has shown that there has been disparate treatment of similarly situated employees.

Additionally, plaintiff disputes defendants' characterization of the adverse treatment she allegedly received as petty and trivial, pointing to the complaint's numerous allegations relating to her demotion and lost opportunity to apply for a promotion, a decrease in her wages, and damage to her reputation, among other things. The complaint repeatedly states that this conduct

151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 10 of 18

[* 10]

was due to her race and gender. Further, plaintiff alleges that the City was complicit, as it did not prevent such misconduct or respond when she complained about the behavior. Plaintiff also states that the comparators are sufficient to defeat a motion to dismiss and that her allegations that non-Hispanic males and white women were not excluded from meetings, harassed over any off-duty work, or subjected to disciplinary investigations without justification raise questions of fact not appropriate for consideration at this juncture.

In reply, citing *Kaisman v Hernandez* (61 AD3d 565, 566 [1st Dept 2009]), defendants adhere to their position that the complaint is conclusory and full of contradictions and, as such, it is not credible. They reiterate that the complaint does not raise an inference of disparate treatment because women – in one of her protected classes – received superior treatment, and because, according to defendants, a white male who faced a disciplinary charge also was suspended pending investigation.

After careful consideration, the court denies the prong of the motion that seeks dismissal of the discrimination-related claims. As the parties note, under CPLR § 3211 (a)(7), courts afford the pleadings a liberal construction and only dismiss if the facts, as alleged, state a cognizable legal claim (*Seemungal v New York State Dept. of Fin. Servs.*, 222 AD3d 467, 467 [1st Dept 2023]). "[W]hether a plaintiff can ultimately establish its allegations is not part of the calculus" (*Audthan LLC v Nick & Duke, LLC*, 42 NY3d 292, 303 [2024] [citations and internal quotation marks omitted]).

To state a claim under the SHRL, a complaint must allege that the plaintiff is part of a protected class, that he or she is qualified for his or her position, that the plaintiff suffered an adverse employment action, and that the circumstances of the action gives rise to an inference of discrimination (*Acala v Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 222 AD3d 706, 707

151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 11 of 18

11 of 18

[* 11]

[1st Dept 2023]). Further, the complaint must state that similarly situated persons who were not part of the protected class received more favorable treatment (*id.* at 708). Under the CHRL, the complaint is essentially the same, except that the CHRL requires the plaintiff to allege that "she or he was subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic (*id.* at 707).

Here, the complaint alleges, and defendants do not deny, that plaintiff, as a Hispanic woman, belongs to two protected classes. Further, the complaint alleges that plaintiff was highly qualified for her position. In support, it sets forth her history of promotions, her status as the first Hispanic employee to achieve her level of seniority, and several of the commendations and opportunities she received as a result of her work. Additionally, and contrary to defendants' contentions, the complaint adequately states that plaintiff suffered adverse employment actions. Regardless of whether plaintiff lost the opportunity to apply for a promotion due to an investigation motivated by discriminatory animus, the complaint states that, for discriminatory reasons and due to a hostile work environment, plaintiff ultimately was demoted, resulting in a substantial decrease in pay, and sequestered on a floor without colleagues or work. A demotion is considered an adverse employment action (*James v City of New York*, 144 AD3d 466, 467 [1st Dept 2016]), and thus satisfies the standards of both the SHRL and the CHRL.

The most contentious issue is whether plaintiff has alleged circumstances that raise an inference of discrimination. Defendants are correct that the complaint does not point to derogatory statements about plaintiff's race or gender, and that some women, including one employee who purportedly is Asian or Asian American, was treated better than plaintiff. However, defendants oversimplify the issue. Here, plaintiff alleges that she is part of two classes, and that none of the women assistant managers were members of both classes. To determine the

**151379/2024  VARGAS, DIANA vs. CITY OF NEW YORK ET AL**
  **Motion No.  001**

**Page 12 of 18**

12 of 18

sufficiency of the complaint, the court considers the circumstances as a whole rather than a separate analysis as to the sufficiency of each individual allegation.

Among other things, the complaint states that plaintiff "was treated noticeably different than her colleagues" (NYSCEF Doc. No. 7, ¶ 41), that O'Neill ignored her comments that some analysts felt scared and offended due to controversies surrounding the Black Lives Matters movement (*id.*, ¶¶ 42-44). Giving plaintiff the benefit of all favorable inferences, the complaint further intimates that O'Neill excluded plaintiff from the subsequent meetings, which were relevant to the issue of racism, due to her race and gender (*id.*, ¶ 51). The complaint alleges that Strong, a white male, was promoted for doing work alongside plaintiff, who did not receive credit or commendation for the same work. Also, the complaint suggests that the disciplinary charges against her, which ultimately were dismissed, were merely pretextual means to discriminate against her. Finally, plaintiff alleges that both the individual defendants and others ignored or trivialized her complaints about discriminatory treatment directed toward her, and that ultimately, she was evicted from her office, demoted, and secluded from her fellow employees due to the discriminatory animus of the individual defendants, particularly O'Neill. Collectively, the allegations raise an inference of discrimination, and the ongoing nature of the harassment and adverse impacts support a cause of action for hostile work environment (*see Walker v Triborough Bridge & Tunnel Auth.*, 220 AD3d 554, 554-555 [1st Dept 2023] [allegations that the plaintiff, a Black female, was more highly scrutinized and was excluded from meetings to which her non-Black male peers were invited, and that she and other Black females were subjected to verbal abuse, stated claims for discrimination and hostile work environment]).

The court rejects defendants' argument that because Assistant Director Stacy Butler was removed from his job in the laboratory, plaintiff has not successfully alleged discriminatory

151379/2024  VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001
Page 13 of 18

13 of 18

application of disciplinary procedures. Contrary to defendant's contention, the complaint states that "Butler was allowed to remain in NYPD's Laboratory while his charges were adjudicated" (NYSCEF Doc. No. 7, ¶ 352). The argument that the complaint's failure to state that the other assistant directors had around the same rank as plaintiff is fatal is not persuasive, as the complaint expressly states that "Plaintiff is similarly situated to the aforementioned Assistant Directors in every material way" (*id.*, ¶ 146). The failure to elaborate further as to everyone's duties is not fatal, as "employment discrimination claims brought under the City and State HRLs are generally analyzed under a lenient notice pleading standard, whereby the plaintiff need not plead specific facts, but must only give the defendants fair notice of the nature and grounds of the claims" (*Walker*, 220 AD3d at 554 [internal quotation marks omitted]).

Defendants' position that the complaint's contradictions and conclusory statements mandate dismissal is unpersuasive. *Kaisman* (61 AD3d at 566) is distinguishable, as there the plaintiff's sworn statement in a prior lawsuit that he initiated the sexually aggressive conduct at issue contradicted his claims in the case at hand that he was the victim of such conduct. Further, some of the alleged contradictions are not actually contradictory. For example, defendants contend that plaintiff simultaneously alleges that she was excluded from meetings by O'Neill and that she attended such meetings and was not allowed to speak. However, the complaint states that O'Neill "regularly excluded" her from meetings (NYSCEF Doc. No. 7, ¶ 138) but that on "rare occasions" he invited her to attend (*id.*, ¶ 136).

Moreover, to the extent that there are contradictions, they do not permeate the complaint so as to render it incredible in its entirety. For example, the allegation that plaintiff was denied the opportunity to receive a promotion lacks merit; the complaint states that plaintiff was denied the chance to apply for a promotional opportunity that arose in late 2022 to early 2023 because

151379/2024  VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 14 of 18

[* 14]

of the pending disciplinary charges (NYSCEF Doc. No. 7, ¶¶ 159-160), but it also states that the disciplinary charges were issued on September 6, 2023 (*id.*, ¶ 236).[5] Plaintiff cannot assert a viable cause of action for failure to promote based on these contentions. Generally, however, the purported contradictions raise issues of fact and credibility suitable for resolution by the trier of fact.

   b.   Retaliation.

As stated above, plaintiff alleges that defendants retaliated against her because she filed discrimination claims against them. "To make out a prima facie claim of retaliation under the State HRL, a plaintiff must show that (1) he/she has engaged in a protected activity, (2) his/her employer was aware of such activity, (3) he/she suffered an adverse employment action based upon the activity, and (4) a causal connection exists between the protected activity and the adverse action" (*Harrington*, 157 AD3d at 585). The CHRL test is similar, but the third component merely requires the allegation that the employer's action disadvantaged the plaintiff (*id.*) and/or made it reasonably likely to have a deterrent effect.

In pertinent part, the complaint alleges that, in her capacity as a mandatory reporter, plaintiff filed discrimination complaints on behalf of her subordinates in September and October 2023. It states that, shortly after these events, on October 26, 2023, O'Neill drafted a memo that sought plaintiff's transfer out of the laboratory. Further, as a result of plaintiff's transfer, she was locked out of her former office, denied access to the laboratory, removed from a prestigious mentoring program, and demoted.

---

[5] Thus, the court need not consider the issue of whether to consider the documentary evidence that defendants submitted as Exhibit B (NYSCEF Doc. No. 8).

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**
  **Motion No.  001**

**Page 15 of 18**

15 of 18

In support of the prong of their motion to dismiss the causes of action for retaliation, defendants note that in *Fraiberg v 4Kids Entertainment, Inc.* (2008 US Dis LEXIS 30601, *6, 2008 WL 821820 [SD NY 2008]), the federal court found that the plaintiff's employer's requirement that she sign a general release from liability to receive her severance package was not retaliatory because the plaintiff did not engage in the protected activity until after the employer required such release. Based on *Fraiberg*, defendants argue that because the complaint at hand alleges that defendants discriminated against her before she filed her discrimination complaint, it fails to state a cause of action for retaliation.

In opposition, plaintiff asserts that the complaint successfully alleges retaliation. She notes that the first page of the complaint sets forth all the elements of a retaliation claim (NYSCEF Doc. No. 7, *4). According to plaintiff, this sufficiently satisfies the notice pleading standards that apply to discrimination claims. She also points out the numerous instances in the complaint where she details her complaints of discrimination and the allegedly retaliatory conduct. Finally, she notes that the alleged retaliation was close enough in time to the filing of the discrimination claims that it raises an inference of retaliation. In reply, defendants reiterate their prior arguments.[6]

The court concludes that the causes of action for retaliation survive this pre-answer motion for dismissal. As stated, the complaint asserts that shortly after plaintiff filed discrimination complaints on behalf of other employees, defendants engaged in retaliatory activity. The loss of her hard-fought promotion, along with other negative treatment, is sufficient to state a claim under both the city and state law standards (*see Walker*, 220 AD3d at 555).

---

[6] The court does not consider defendant's alternative basis for dismissal of the claim, which they set forth in footnote two of their reply papers, as they raised it for the first time in reply (*see Indymac Bank, F.S.B. v Baroi*, 214 AD3d 414, 415 [1st Dept 2023]).

Further, "a causal connection can be inferred from close temporal proximity of the immediate reassignment" (*Pelepelin v City of New York* (189 Ad3d 450, 452 [1st Dept 2020] [*Pelepelin II*]). Defendants point to the alleged motivation for their conduct – that is, the disciplinary charges and performance issues – but these are merely "potential rebuttal argument[s] to a prima facie case . . ., which is misplaced at this early procedural juncture" (*Petit v Department of Educ. of the City of N.Y.*, 177 AD3d 402, 404 [1st Dept 2019] [regarding discrimination claim]).

Defendants' other argument to the contrary is not persuasive. Although defendants correctly asset that their conduct cannot be considered retaliation if it is merely a continuation of prior discriminatory behavior, the principal does not apply if the complaint "alleges at least some 'new' or escalated conduct after the protected activities took place" (*O'Rourke v National Foreign Trade Council, Inc.*, 176 AD3d 517, 518 [1st Dept 2019]; *see Doe v New York City Police Dept*, 190 AD3d 411, 413 [1st Dept 2021]). Here, the complaint does articulate some escalation – that is, the transfer of plaintiff from her assignment and the concomitant loss of her title and reduction in salary. "Whether the motivation for this conduct was retaliation or continued discrimination [or a response to plaintiff's alleged misconduct] cannot be determined at this stage of the litigation" (*id.*). Defendants' reliance on the trial court's decision in *Pelepelin* is not persuasive. That order dismissed the plaintiff's retaliation claims because the complaint did not allege that the plaintiff had engaged in a protected activity. In *Pelepelin II* (189 Ad3d at 452), however, the First Department modified that portion of the order, finding that the plaintiff's email about the allegedly discriminatory conduct was a protected activity.

Additionally, for a similar reason, defendants' reliance on *Fraiberg* fails. The fact that there was discrimination before the protected activity occurred cannot, by itself, mandate dismissal of a retaliation claim. Otherwise, an employer would be insulated from liability for

151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 17 of 18

retaliation if it discriminated against an employee before she or he filed a complaint about it. However, applying the principle articulated in *Fraiberg*, the court concludes that plaintiff's argument that O'Neill's refusal to approve her off-duty work request was retaliatory fails, as the complaint alleges that O'Neill refused her application on September 15 and that plaintiff filed the initial set of discrimination charges on or after September 25, 2023 (*see* NYSCEF Doc. No. 7, ¶¶ 247, 271-276).

The court notes that defendants have cited summary judgment and dismissal motions interchangeably. However, different standards apply, and dismissal under CPLR §3211 (a) (7), prior to the interposition of an answer, is proper only where plaintiff has failed to state a claim. Even where "the facts supporting an inference of discriminatory intent against the [defendants] are thin," courts make all favorable inferences, without determining the strength of the complaint or the credibility of any of the parties (*IntegrateNYC, Inc. v State*, 228 AD3d 152, 169 [2024] [noting that plaintiffs also face this hurdle because defendants rarely admit discrimination]). Further, the court has addressed the State and City Human Rights Laws together, as it determines that plaintiff has stated viable causes of action under both. The court has considered all arguments, even if it does not discuss them here. Accordingly, it is

ORDERED that, except to the limited extent that the complaint asserts failure to promote, which claim is severed and dismissed, the motion is denied.

This constitutes the Decision and Order of this Court.

20250630121514ACHESLER3D73CED46ACF4191BAF43FECED4F6908

**6/30/2025**
**DATE**                                                             **ARIEL D. CHESLER, J.S.C.**

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**151379/2024   VARGAS, DIANA vs. CITY OF NEW YORK ET AL**                     **Page 18 of 18**
**Motion No.  001**

18 of 18

[* 18]